**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| CARLTON E. CURRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-00169-TWP-TAB |
| ) | |
| CITY OF LAWRENCE UTILITIES SERVICE ) | |
| BOARD, CITY OF LAWRENCE, INDIANA, ) | |
| and DEAN  JESSUP, Mayor, in his individual ) | |
| and in his official capacity, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment. Plaintiff Carlton E. Curry ("Mr. Curry") seeks partial summary judgment on his claim under Indiana Code § 8-1.5-3-5(d) (Dkt. 9).  Defendants City of Lawrence Utilities Service Board, City of Lawrence, Indiana ("the City"), and Dean Jessup ("Mr. Jessup"), individually and in his official capacity as Mayor of Lawrence (collectively, "Defendants"), seek summary judgment on all of Mr. Curry's claims (Dkt. 28). For the reasons explained below, Mr. Curry's motion is **DENIED**. Defendants' motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

**A.     Procedural Background**

Mr. Curry originally filed this lawsuit in Marion Superior Court, Indiana asserting violations of 42 U.S.C. §1983, the Age Discrimination in Employment Act of 1967 ("ADEA") and various Indiana state law claims including wrongful termination, failure to pay wages, defamation and intentional interference with employment relationship.  Defendants removed the action to federal court on January 30, 2013.  Shortly thereafter, on February 22, 2013, Mr. Curry

filed his Motion for Partial Summary Judgment (Dkt. 9). Defendants' response was filed in conjunction with their Motion for Summary Judgment (Dkt. 28) on July 25, 2013. In its response, Defendants do not specifically identify disputed facts within Mr. Curry's initial motion. Therefore, for the purposes of Mr. Curry's motion, his facts as stated will be assumed to be true to the extent admissible evidence supports them. Additional undisputed facts presented in Defendants' motion will be incorporated.

**B.      Factual Background**

The following material facts are undisputed and considered in the light most favorable to the non-moving parties when considering the cross motions. On September 5, 2006, the Common Council for the City of Lawrence[1] ("Common Council") established the Utility Service Board ("USB") pursuant to Indiana Code § 8-1.5-3-3(a)(3), (f), and Lawrence Code of Ordinances, § 1-1-3-13. At a March 12, 2008, meeting of the USB, the position previously titled "director of utilities" was changed to "director/superintendent," which is consistent with Indiana Code language.

In January 2008, Mr. Curry began a term on the Common Council. In 2009, then-mayor, Paul Ricketts ("Mr. Ricketts") approached Mr. Curry about becoming the "director/ superintendent" of the city owned municipal utility. Mr. Ricketts and Mr. Curry agreed that if installed as "director/superintendent," Mr. Curry would resign his position on the Common Council. At the August 12, 2009 USB meeting, Mr. Ricketts discussed Lawrence building its own wastewater treatment plant and recommended Mr. Curry for the "director/superintendent" position. The USB voted unanimously to appoint Mr. Curry as "director/superintendent." Thereafter, Mr. Curry resigned his position on the Common Council.

---

[1] The Common Council is the legislative arm of Lawrence City government. Its nine members--six who are elected by district and three who are elected at large-- approve the annual City budget and ordinances that keep the City growing and progressing. http://www.cityoflawrence.org/lawrence/common-council/

The City owned wastewater and water utility is financed through water and sewage fees and has a separate budget from the City's general fund.  The USB approves the utility's budgets and expenses.  Utility employees are paid from the utility's budget, but through the City.  For example, employees who work for both the utility and City receive salaries from both the utility budget and general fund, but receive only one combined City paycheck.  Although the USB approves contracts for the utility, the mayor signs all contracts on behalf of the City.

While serving as "director/superintendent," Mr. Curry worked closely with Mr. Ricketts. Specifically, Mr. Curry attended staff meetings with Mr. Ricketts and City department heads and frequently emailed Mr. Ricketts for guidance and to gain support for USB initiatives.   In particular, Mr. Curry proposed that the City build its own wastewater treatment plant.  He worked closely with Mr. Ricketts to negotiate with the current wastewater treatment provider, as well as to develop plans for the initiative.

In November 2011, Mr. Ricketts, a Republican, was challenged in the mayoral election by Democratic candidate, Mr. Jessup. Mr. Curry campaigned for Mr. Ricketts and other Republican candidates.  Mr. Jessup ultimately won the election.  Mr. Curry communicated with Mr. Jessup regarding the utility, including giving Mr. Jessup's transition team a presentation of utility matters. Mr. Jessup's transition team sent department heads and Mr. Curry correspondence inviting them to submit a resume and letter of interest if they wished to remain in their current position.  In response, Mr. Curry sent his resume and letter of interest.

Mr. Jessup first learned about the proposed wastewater treatment plant from Commonwealth Engineering, a firm retained to consult on the project.  He became concerned about the cost of the proposal and questioned whether the project was the best way forward.  Mr. Curry advocated for the wastewater treatment plant.  As a result of this advocacy, Mr. Jessup

believed the working relationship between himself and Mr. Curry would be strained because of Mr. Curry's strong opinions regarding the direction of the utility.  Mr. Jessup decided to replace Mr. Curry as "director/superintendent."

In December 2011, Mr. Jessup's transition team recommended John Solenberg ("Mr. Solenberg") as Mr. Curry's replacement.  Mr. Solenberg was 12 years younger than Mr. Curry; however, both men are over the age of 40.  Mr. Jessup believed Mr. Solenberg was qualified for the position and Mr. Solenberg agreed to accept.

Mr. Jessup assumed the office of mayor on January 1, 2012.  Mr. Curry was notified in person and by letter dated January 19, 2012, that his employment was terminated effective January 20, 2012.  He was paid all wages for work through that date, including accrued vacation and sick time.  Mr. Curry was not given notice, a hearing, or a written statement of cause for his termination, a protection afforded to superintendents by Indiana Code § 8-1.5-3-5.

On January 23, 2012, Mr. Jessup presented Mr. Solenberg to the USB for the position of "director/superintendent."  The USB unanimously appointed Mr. Solenberg to the position.  Mr. Curry's termination was not publicly discussed, aside from announcements made at the January 23, 2012 USB meeting, a memorandum presented at the meeting, and the resulting meeting minutes.

Additional facts will be discussed below, as necessary.

## II. <u>LEGAL STANDARD</u>

Summary judgment is only appropriate by the terms of Federal Rule of Civil Procedure 56 where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56.

*I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996).  Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact.  *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003).  Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial.  *Id.* at 648.  "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made."  *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## III.  DISCUSSION

As referenced earlier, Mr. Curry brings various counts under both state and federal law: Count I, wrongful discharge under Indiana Code § 8-1.5-3-5 and Article 1, Section 12 of the Indiana Constitution; Count II, violation of 42 U.S.C. § 1983 under the Fourteenth and First Amendments to the U.S. Constitution; Count III, defamation under Indiana law; Count IV, intentional interference with employment relationship under Indiana law; Count V, wage payment claim under Wage Payment Statute, Indiana Code § 22-2-5-2; and Count VI, age discrimination under the Age Discrimination in Employment Act ("ADEA").  The various claims will be addressed below.

### A.    Count VI—Age Discrimination

The Court can easily dispose of Mr. Curry's ADEA claim.  The ADEA prohibits age discrimination against "employees," which by definition excludes an "appointee on the policymaking level."  *Opp v. Office of State's Attorney of Cook Cnty.*, 630 F.3d 616, 619 (7th Cir. 2010).  "An individual is considered an appointee on the policymaking level if the position

held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Id.* (internal quotation marks omitted).  When a position's duties are set out by law, a court can make such a determination as a matter of law.  *Id.* at 620.  If the duties are not set out by law, then an individual's job duties are considered.  *Id.*  Mr. Curry's response in opposition to summary judgment fails to address this particular issue under the ADEA, and the Court is persuaded by Defendants' motion that Mr. Curry was an appointee at the policymaking level.  First, it cannot be disputed that Mr. Curry was appointed.  Second, it cannot be disputed that if Mr. Curry is considered a "superintendent" under Indiana law, the statutory duties of that title confer policymaking functions.  Indiana Code § 8-1.5-3-5(a) provides that the superintendent of a utility shall:

> (1) appoint, supervise, and dismiss all employees of the utility; (2) employ unskilled labor when needed, without competitive examination; (3) investigate all claims against the utility; (4) oversee the operation of the utility and any construction work, repairs, or alterations to the system; and (5) advise the board in all matters that will bring about an efficient and economical operation and maintenance of the utility.

This encompasses "meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation," *Opp*, 630 F.3d at 619, as the facts of this case indicate reasonable disagreement over the future of the City owned utility. Even if Mr. Curry is not considered a "superintendent," but just a "department head," his actual duties and actions still meet the statutory definition.  Mr. Curry proposed the construction of a wastewater treatment plant, he participated in the budget, hiring and firing, and oversaw utility operations.  These duties are broad, general, and involve discretion, and required Mr. Curry to provide meaningful input in contexts that could give rise to reasonable disagreement.  Therefore, the ADEA does not apply to the facts of this case and Mr. Curry's claim fails.  Defendants'

motion on the age discrimination claim, Count VI, is **GRANTED**.

**B.      Count II—42 U.S.C. § 1983 ("§ 1983")**

With respect to his § 1983 claim, Mr. Curry alleges he was terminated because of his political affiliation in violation of the First Amendment.  However, his § 1983 claim must be dismissed on the same ground discussed above.  "An individual may be terminated on the basis of political affiliation when the nature of the public official's job makes political loyalty a valid qualification for the effective performance of his position," such as a policymaker.  *Davis v. Ockomon*, 668 F.3d 473, 477 (7th Cir. 2012).  As also defined above, a policymaker is one who "authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation."  *Id.* (internal quotation marks omitted).

Mr. Curry argues that he only had the power to advise the USB, and thus was not a policymaker.  However, "the relevant inquiry is input, not absolute control."  *Warzon v. Drew*, 60 F.3d 1234, 1240 (7th Cir. 1995).  Mr. Curry provided much "meaningful input" into the utility's operation and future.  His input can also be construed as political in nature, given the Mayor Ricketts and Mayor Jessup administrations' differing views on the construction of a wastewater treatment plant, as well as Mr. Curry's advocacy for the project.  Therefore, the Court finds Mr. Curry was an employee with policymaking authority, and his claim under the First Amendment for political affiliation must fail.  Defendants' motion on this portion of Count II is **GRANTED**.

Mr. Curry also alleges that Defendants violated his Fourteenth Amendment rights when they terminated him without notice, an opportunity for a hearing, and a determination that there was cause.  His response in opposition to summary judgment also references a Fifth Amendment

takings claim and a Fourteenth Amendment substantive due process claim.  These claims are not in his Complaint, and so the Court should not and will not consider them on summary judgment. *Messner v. Calderone*, 407 F. App'x 972, 974 (7th Cir. 2011) ("A plaintiff cannot add additional claims through arguments made in opposing summary judgment."); *see* Dkt. 1-1 at 9–10 (quoting § 1983 and alleging general deprivation of "federal-protected rights").

A property interest in continued employment can be created by "an independent source such as state law securing certain benefits." *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). In the context of public employment, "the plaintiff must have a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause." *Id.* (internal quotation marks omitted).   Here, Mr. Curry relies on Indiana Code § 8-1.5-3-5(d), which states, "[t]he superintendent may be removed by the board for cause at any time after notice and a hearing." In *Morrison v. McMahon*, 475 N.E.2d 1174, 1181 (Ind. Ct. App. 1985), the Indiana Court of Appeals held that "the power to discharge a superintendent is vested solely in the board" according to the instruction in Indiana Code § 8-1.5-3-5(d).  Assuming for purposes of summary judgment that Mr. Curry had a protected property interest by virtue of this statute, it is undisputed that Mr. Curry was not terminated by the USB for cause after notice and a hearing. [2]

However, a violation of state law that confers a procedural right does not necessarily deny federal due process.  *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993).  The inquiry focuses on whether *federal* due process standards were violated.  Working under the assumption that Mr. Curry was, indeed, a "supervisor," yet was terminated by Mr. Jessup, Mr. Curry's claim is a challenge to the "random and unauthorized" act of the state official in question.  *See Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008).  In such cases, a state's

---

[2] If, as Defendants allege, Mr. Curry was not a "superintendent," the requirement of Indiana Code § 8-1.5-3-5 would not apply.  Mr. Curry would thus not have a vested property interest in continued employment.  Instead, he served at the pleasure of the mayor, and could not pursue a procedural due process claim under federal law.

obligation is to "provide sufficient remedies after its occurrence, rather than to prevent it from happening." *Id.* Accordingly, Mr. Curry's claim can stand only if Indiana law provides insufficient remedies for the violation he alleges.

In Indiana, a wrongful discharge claim for at-will employment is a tort governed by the Indiana Torts Claim Act ("ITCA") if a governmental unit or official is the defendant. *Cantrell v. Morris*, 849 N.E.2d 488, 494 (Ind. 2006). The ITCA immunizes governmental entities and officers acting "within the scope of" their employment from liability in many areas, including employment decisions. *Id.* at 595. However, Indiana courts have allowed claims for wrongful discharge against governmental entities or officials when an employee has a vested right to continued employment. *See, e.g.*, *Wells v. Auberry*, 476 N.E.2d 869, 873–74 (Ind. Ct. App. 1985) (awarding damages under state and federal law when public-employee plaintiff had protected property right to continued employment); *see also Morrison*, 475 N.E.2d at 1181 (remanding to trial court to allow wrongful discharge claim under Indiana Code § 8-1.5-3-5). Therefore, the Court finds that ITCA immunity would not apply to bar Mr. Curry's state claim for wrongful discharge under Indiana Code § 8-1.5-3-5 and he has a sufficient state law remedy. Federal due process is not implicated and Mr. Curry's federal claim must fail. Defendants' motion on this claim is **GRANTED**.

## C.   Counts I, III, IV, V—State Law

Having resolved all of the federal claims, the only claims remaining are brought under state law. Under 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction over all claims, such as state law claims lacking diversity, "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, district courts may decline to exercise

supplemental jurisdiction over a claim if "the claim raises a novel or complex issue of State law" or it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(1), (3).  The Seventh Circuit has held that "[n]ormally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."  *Sharp Elec. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) (internal quotation marks omitted).

Here, the Court has dismissed the federal claims over which it has original jurisdiction.  It further finds that of the remaining state law claims, there are issues of novel or complex state law best left to state courts.  First, although the Court has, in considering the facts most favorable to Mr. Curry who is the non-movant on his federal claims, assumed he was a "superintendent," the parties dispute whether Mr. Curry was a "superintendent" or "department head," and whether Indiana Code § 8-1.5-3-5 applies.  Second, only two Indiana cases have discussed Indiana Code § 8-1.5-3-5, and only one actually applied it, and rather briefly.  Finally, further complicating the issues, Defendants argue that Indiana Code § 8-1.5-3-5—if applied to bar a mayor from terminating a superintendent—violates Article XV, Section 2 of the Indiana Constitution.  The determination of state constitutional law is best left to state courts.

Moreover, the Court finds that none of the three general exceptions to the rule apply.  *See Sharp Elec. Corp.*, 578 F.3d at 514–15 ("(1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." (internal quotation marks omitted)).  First, this case was originally filed in Marion Superior Court, so the statute of limitations is not a bar.  Second, this case was filed in state court on

December 21, 2012, and the parties filed their respective summary judgment motions only two months and six months later.  Mr. Curry asserts in his response to summary judgment that much discovery had not yet been completed, and Defendants confirmed in their reply that additional discovery would likely ensue after a ruling on summary judgment.  Thus, substantial resources have not been committed that would be duplicated.  Finally, as already discussed, it is not clear how the pendent claims should be decided. Therefore, the Court declines to exercise supplemental jurisdiction on the remaining state law claims in Counts I, III, IV, and V.  These Counts are thus **REMANDED** to the Marion Superior Court.

## IV.  <u>CONCLUSION</u>

Accordingly, Defendants' Motion for Summary Judgment (Dkt. 28) is **GRANTED in part** and **DENIED in part**.  The Court **GRANTS** the motion on Counts II and VI, and these Counts are **DISMISSED with prejudice**.   The Court declines to exercise supplemental jurisdiction on Counts I, III, IV, and V, and thus necessarily **DENIES** Defendants' motion on these Counts.   Additionally, Mr. Curry's Motion for Partial Summary Judgment (Dkt. 9) is necessarily **DENIED**.  The Court **REMANDS** the remaining claims, Counts I, III, IV, and V, to Marion Superior Court, Indiana.

**SO ORDERED**.

Date: <u>03/03/2014</u>

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

11

DISTRIBUTION:

George W. Pendygraft
GEORGE W. PENDYGRAFT, P.C.
ecolawyer@aol.com

Mickey J. Lee
MEILS THOMPSON DIETZ & BERISH
mlee@mwbllp.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com